IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAMONA SINGH,

    Plaintiff,

v.

FIRST UNUM LIFE INSURANCE
COMPANY; UNUM GROUP
CORPORATION,

    Defendants.

Civil Action No. 1:20-cv-197

**COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER A SALARY COUTINUATION PAYROLL PRACTICES PLAN AND ERISA**

COMES NOW, Plaintiff, Ramona Singh, and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay long-term disability benefits due under an employee benefits plan under ERISA, and for Defendants' other violations of the Employee Retirement Security Act of 1974 ("ERISA"):

**JURISDICTION AND VENUE**

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claims "relate to" "employee welfare benefits plan[s]" as defined by ERISA, 29 U.S.C. § 1001 *et seq.* and the subject Benefit Plan constitutes "plan[s] under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

1

3. Venue is proper within the Eastern District of New York pursuant to 29 U.S.C. § 1132(e)(2).

**PARTIES**

4. Plaintiff, Ramona Singh, (hereinafter "Plaintiff"), is a resident of Richmond County, New York.

5. Defendant First Unum Life Insurance Company ("Unum Life") is an insurance company authorized to transact the business of insurance in this state, and may be served with process through the Superintendent of Financial Services, at New York State Department of Financial Services, Corporate Affairs Unit, One Commerce Plaza – 20th Floor, Albany, New York 12257.

6. Defendant Unum Life is the party obligated to pay benefits and to determine eligibility for benefits under Group Long Term Disability Policy No. 530243 051, issued by Unum Life to White & Case LLP.

7. Defendant Unum Group Corporation ("Unum Group") is the parent company of Defendant Unum Life.

8. Defendant Unum Group exercises significant control over the policies and actions of Defendant Unum Life.

9. Defendant Unum Group is the employer of all persons who acted on behalf of Unum Life in regards to Plaintiff's claim.

10. Plaintiff alleges upon information and belief that Defendant Unum Group established the policies and procedures governing the payment or denial of claims, the policy for document retention and otherwise established the procedures under which the decision-makers

made the decision to deny benefits that is the subject of this law suit, and was the de facto decision-maker in the Plaintiff's claim.

11. Plaintiff alleges upon information and belief that Defendant Unum Group may be served with process by and through its registered agent for service, Corporation Service Company, at 80 State Street, Albany, New York 12207-2543.

**FACTS**

12. Plaintiff was employed by White & Case, LLP, ("White & Case") in New York, NY.

13. White & Case maintains the "White & Case LLP Health and Welfare Plan" ("the LTD Plan") which provides long-term disability benefits to its employees.

14. Through her employment with White & Case, Plaintiff is a participant or beneficiary of the LTD Plan.

15. Plaintiff has satisfied all the requirements and was eligible for coverage under the LTD Plan.

16. Benefits due under the LTD Plan are insured by Insurance Policy No. 530243-001.

17. Plaintiff ceased work due to a disability on November 25, 2015, while covered under the LTD Plan.

18. Plaintiff's disability is primarily the result of Convergence Insufficiency, which causes her extreme discomfort and pain when using her eyes, as well as sensitivity to light and inability to focus.

19. Plaintiff has been and continues to be disabled as defined by the provisions of the LTD Plan.

20. Plaintiff filed an application for LTD benefits under the LTD Plan on May 11, 2016.

21. By letter dated July 28, 2016, Unum Life denied Plaintiff's LTD claim.

22. Plaintiff timely appealed the denial of her LTD benefits.

23. By letter dated March 17, 2017, Unum Life reversed its decision of denial and approved Plaintiff's claim.

24. In the same letter, Unum Life informed Plaintiff that it approved her claim on the basis of somatoform disorder, which is eligible for only 24 months of LTD benefits under the terms of the LTD Plan.

25. Unum Life paid Plaintiff LTD benefits from May 2016 through May 2018.

26. By letter dated June 18, 2018, Unum terminated Plaintiff's benefits based on its conclusion that she had no restrictions and limitations due to a physical condition and had exhausted her benefits under the LTD Plan's 24-month mental and nervous limitation.

27. Plaintiff appealed the termination of her benefits by letter dated September 26, 2018.

28. By letter dated November 19, 2018, Unum denied Plaintiff's appeal and stated its decision was final.

29. Despite several of Plaintiff's doctors providing supporting opinions for her disability claim and its physical basis, Unum Life based its denial on the opinion of its own file-reviewing physicians who never examined Plaintiff.

30. Unum Life never requested an Independent Medical Examination in an attempt to resolve this conflict.

31. Plaintiff has exhausted her administrative remedies under the LTD Plan.

32. Unum Life would pay any LTD benefits due out of its own funds.

33. Unum Life owed Plaintiff duties as a fiduciary of the ERISA Plan, including the duty of loyalty.

34. Unum Life was under a perpetual conflict of interest because the benefits would have been paid out of its own funds.

35. Unum Life allowed its concern over its own funds to influence its decision-making.

36. When Unum Life denies a claim before all of the contractual benefits are paid, that is referred to as a "recovery."

37. Unum Life's conflict of interest and bias is evident in the fact that it establishes monthly financial targets that are reached by denying claims whose reserves would cumulatively meet those targets.

38. The monthly financial targets for denying claims are called "recovery plans," or words to that effect.

39. The monthly targets, or "recovery plans," including the dollar amounts to be reached in terms of reserves on denied or "recovered" claims and the count of total claims that should be recovered.

40. These "recovery plans" were given by Vice Presidents (often through the Vice President's administrative assistant) in the claims department to Assistant Vice Presidents in writing and verbally.

41. The Vice President also gave to the Assistant Vice Presidents a list of claims that had been identified as potential "recoveries," which list included the names of individual insureds and the reserve amount associated with the claims of those insureds.

42. The list of claims that were potential recoveries, including the reserve amounts, was transferred by the Vice President by hard copy printouts.

43. The recovery plans and the list of potentially recoverable claims provided to the Assistant Vice President are disseminated by the Assistant Vice Presidents to the Directors they supervised, and are used by the Assistant Vice President to coach or supervise their Directors.

44. Directors at Unum are the employees who ultimately make the decision to approve or deny claims for benefits.

45. The recovery plans and the list of potentially recoverable claims that are given to the Assistant Vice Presidents is passed on to Directors verbally, so there will be no record of the Directors being told their monthly financial targets of "recoveries" or denied claims.

46. After the Assistant Vice Presidents pass on the recovery plans and the list of potentially recoverable claims to the Directors, the Assistant Vice Presidents shred the documents that contained the names of individual insurers and their reserve amounts.

47. The Directors use this information, and the targeted financial amounts to guide them and the claims handlers under them to deny meritorious claims in order to meet the "recovery plan" for their team.

48. In order to receive bonuses under Unum Life's incentive program, Unum Life employees are evaluated against certain criteria, which include planned claim terminations, expected liability acceptance rates, and anticipated reopen rates. (see e.g., Exhibit 1, ID Director Scorecards).

49. Internal documents reveal that targets and goals for claim closures are set at the unit level and that there are goals set for open claim recoveries (i.e., denying an open claim) per day. (See Exhibit 2, Weekly Tracking Reports).

6

50. In his recent deposition, Anthony Scuderi—who was an Assistant Vice President with Unum—confirmed Unum continues to target individual claims for their value; testifying that his supervising Vice President would provide him with printed sheets that included the names and financial reserve value of claimants each month; that he would copy the information in those sheets onto a spreadsheet on his personal computer; that he would then verbally disseminate that information to the claim managers he supervised; that he would shred the paper document; and that he would report back to his supervising Vice President periodically on the progress of meeting their "paid recovery" metric (Exhibit 3, selected excerpts from the deposition of Anthony Scuderi). He testified that he believed this was the common practice of all Unum AVPs. See, Id.

51. In essence, Unum Life's claims and appeals units were provided the targets for claim closures and uphold decisions and then were provided the specific claims that would meet those expectations.

52. Paul Peter, another former-Assistant Vice President for Unum, testified that he received the "recovery plan" each month from his Vice President, Maureen Griffin, and that he passed this information down to the Directors he supervised. (See Exhibit 4, selected excerpts from the deposition of Paul Peter). Paul Peter also testified that he received the list of claims that were identified as potential recoveries, which included the names of the claimants and the reserve amount associates with their claim. See, Id. Paul Peter confirmed that he and the Directors he supervised were graded and held accountable for meeting the "recovery plan" and he impressed upon his Directors the importance of meeting the planned numbers. See, Id., at p. 29-30.

53. Defendants' targeting of Plaintiff's claim for denial taints all evidence it developed during the review of his claim as the review was designed to reach the result of a denial, not an impartial weighing of the evidence.

54. Unum Life breached its fiduciary duties to Plaintiff, including the duty of loyalty.

**FIRST CAUSE OF ACTION**
**FOR PLAN BENEFITS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)**

PLAINTIFF incorporates the allegations contained in the above paragraphs as if fully stated herein and says further that:

55. Under the terms of the Plan and policy, Defendant agreed to provide Plaintiff with LTD benefits in the event that Plaintiff became disabled as defined by the Plan.

56. Plaintiff is disabled and entitled to benefits under the terms of the Plan.

57. Defendant failed to provide benefits due under the terms of the Plan, and these denials of benefits to Plaintiff constitute breaches of the Plan.

58. The Plan does not have an adequate grant of discretion, thus Plaintiff's claim is subject to *de novo* review.

59. Unum Life's decisions to deny benefits were wrong under the terms of the Plan.

60. Unum Life's decisions to deny benefits and decision-making processes were arbitrary and capricious.

61. Unum Life's decisions to deny benefits were influenced by the Defendant's financial conflict of interest.

62. Unum Life's decisions to deny benefits were not supported by substantial evidence in the record.

63. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the Plan.

64. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE. Plaintiff requests that this Court grant her the following relief in this case:

**On Plaintiff's First Cause of Action:**

1. A finding in favor of Plaintiff against the Defendant;

2. Damages in the amount equal to the disability income benefits to which she was entitled through the date of judgment under the LTD Plan, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. An Order requiring the Plan or appropriate Plan fiduciaries to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan, as well as any other collateral benefits to which she might be entitled on the basis of being disabled under the LTD plan.

5. Plaintiff's reasonable attorney fees and costs; and

6. Such other relief as this court deems just and proper.

Dated this 10th day of January, 2020.

Respectfully submitted,

ERIC BUCHANAN & ASSOCIATES, PLLC
ATTORNEYS FOR PLAINTIFF

BY: */s R. Chandler Wilson*
R. Chandler Wilson (Tenn. Bar #34491)
414 McCallie Avenue
Chattanooga TN 37402
(423) 634-2506
FAX: (423) 634-2505
ellish@buchanandisability.com
cwilson@buchanandisability.com

*Motion for Admission Pro Hac Vice will be filed contemporaneously*